**Entered on Docket**
**December 23, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
DEC 22 2008
CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>SANGMUN KIM,<br>Debtor. | Case No. 07-53166 ASW<br>Chapter 7 |
| DONGJIN SEMICHEM CO., LTD.,<br>Plaintiff,<br>v.<br>SANGMUN KIM,<br>Defendant. | Adv. Proc. No. 08-5023 |

**MEMORANDUM DECISION**

Before the Court is the Application for Entry of Default Judgment Against Defendant Sangmun Kim (the "Application") filed by Plaintiff Dongjin Semichem Co., Ltd. ("Dongjin"). Dongjin is represented by Attorney Craig C. Chiang of the law firm Buchalter Nemer. Defendant Sangmun Kim ("Debtor") is representing himself in propria persona. Having considered the Application, the supporting declarations and the further pleadings in this and the underlying Chapter 7 bankruptcy case, the Court finds that judgment should be

entered against Debtor under Bankruptcy Code §§ 523(a)(2) and 727(a)(3).[1]

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

On January 31, 2008, Dongjin filed a Complaint to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. Section 523(a)(2), and (a)(6) and to Object to Discharge Pursuant to Section 11 U.S.C. Section 727(a)(2), (a)(3), (a)(4) and (a)(5) (the "Complaint"). The Complaint relates to an arbitration award in the amount of $944,696.46 issued in Dongjin's favor against Debtor on July 9, 2007 (the "Arbitration Award").[2]

**A. Dongjin's Investment in Emailfund**

The underlying arbitration between the parties relates to Dongjin's investment in a California corporation named Emailfund, Inc. ("Emailfund"). Declaration of G. Forsythe Bogeaus in Support of Application for Entry of Default Judgment Against Defendant Sangmum Kim (the "Bogeaus Declaration") at ¶4. Dongjin is a large

---

[1] Unless otherwise provided, all references to code sections shall mean the Bankruptcy Code, codified in Title 11 of the United States Code, 11 U.S.C. § 101, et seq., including all amendments thereto.

[2] A copy of the Arbitration Award is attached as Exhibit A to each of the three declarations filed in support of the Application.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Korean corporate manufacturer of chemicals for the semiconductor industry. Declaration of Chun Hyuk Lee in Support of Application for Entry of Default Judgment Against Defendant Sangmun Kim ("Lee Declaration"), ¶ 5. Emailfund "'engaged in research and development of PDA security software technology'." Bogeaus Declaration at ¶ 4 quoting October 10, 2005 deposition of Debtor. By a stock purchase agreement dated June 24, 2000, Dongjin agreed to invest in Emailfund (the "Agreement") to develop secure internet software to be installed into a chip. Lee Declaration at ¶ 5.

Debtor "was the Chief Executive Officer of, and the President and a Director of, Emailfund from its inception until at least July, 2001." Arbitration Award at 1, Exhibit A to Lee and Bogeaus Declarations. Debtor and Emailfund were determined to be alter egos in the findings of the Arbitration Award. Id. at 5-6.

Under the Agreement, upon performance by Emailfund of certain conditions, Dongjin was to make staged investments up to the total sum of $2 million in exchange for staged delivery of Emailfund shares. Lee Declaration at ¶ 5. An initial $200,000 was due and paid by Dongjin upon the signing of the Agreement. Lee Declaration at ¶ 18. An additional $600,000 was due upon Debtor's assembly of the team to bring the product into its beta phase. Id. Debtor did not get the esteemed scientists he had represented would be on the team, but assured Dongjin that the persons hired would be fine. Based on this representation, Dongjin authorized the additional $600,000 transfer. Id. To obtain the next big chunk of the investment funds, Emailfund had to provide a successful demonstration of the beta phase of the product. Lee Declaration at

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

¶ 20. Such a demonstration was scheduled, but not successfully completed in Dongjin's opinion. Lee Declaration at ¶¶ 20-23. Dongjin asked for Emailfund's financial information from Debtor and was rebuffed repeatedly. Lee Declaration at ¶¶ 24-27.

After Dongjin made an initial $800,000 investment, Dongjin asserts it then discovered that material representations made by Debtor and Emailfund to induce Dongjin to enter into the Agreement were false. Specifically, Dongjin alleges in the Complaint at ¶ 7 that Debtor made the following misrepresentations:

(1) Debtor and Emailfund developed an encryption technology based on wireless technology as the first developer of such technology in the world (see also Lee Declaration at ¶¶ 6, 7 and 10; Bogeaus Declaration at ¶ 47);

(2) Emailfund owned numerous technology patents related to encryption technology (see also Lee Declaration at ¶ 15; Bogeaus Declaration at ¶ 47 citing Arbitration Trial Transcript 3/26; 289:20-290-12);

(3) Debtor and Emailfund had a research center at Stanford University in Palo Alto, California (see also Lee Declaration at ¶ 9);

(4) Debtor and Emailfund had obtained the highest level of wireless encryption technology in the world (see also Lee Declaration at ¶ 10);

(5) Debtor and Emailfund were recruiting investment of $2 million for the further development of the "security software" in return for 40% of the outstanding shares of Emailfund (See also Bogeaus Declaration at ¶ 42,E); and

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 4 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 4 of 22

(6) Debtor and Emailfund had already received investment of $150,000 from Cess Telecom, Ltd. (see also Lee Declaration, ¶ 12).

Dongjin alleges, at paragraph 8 of the Complaint, that Debtor and Emailfund made the following further misrepresentations to Dongjin both in Emailfund's due diligence report provided to Dongjin, and orally:

(1) Emailfund's researchers included Professor Phillip Rogaway, and Dr. Peter Landrock, well-known, prominent engineers in the field of encryption technology (see also Lee Declaration at ¶ 13; Bogeaus Declaration at ¶ 47 citing Arbitration Trial Transcript 3/28; 928:9-19);

(2) Both Professor Rogaway and Dr. Landrock were and would be the core of the technology development team of Emailfund (see also Lee Declaration at ¶ 13; Bogeaus Declaration at ¶ 47 citing Arbitration Trial Transcript 3/28; 928:9-19);

(3) Emailfund owed a number of technology patents including four specific patents related to wireless encryption technology (see also Lee Declaration, ¶ 15, Bogeaus Declaration at ¶ 47 citing Arbitration Trial Transcript 3/26; 289:20-290-12); and

(4) Debtor stated that the investment in Emailfund would be very profitable investment in light of Professor Rogaway and Dr. Landrock being members of Emailfund's technology development team and Emailfund's key patents (Lee Declaration at ¶ 14).

Complaint at ¶ 8.

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 5 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 5 of 22

**B. The Arbitration and Bankruptcy Filings**

On March 1, 2002, Dongjin initiated an action against Emailfund in the Orange County Superior Court seeking rescission of the Agreement and damages for breach of fiduciary duty by Debtor. Declaration of Paul Arrow in Support of Application for Entry of Default Judgment Against Defendant Sangmun Kim (the "Arrow Declaration") at ¶ 3; Lee Declaration at 28. This case went to AAA international arbitration, in light of the binding arbitration provision in the investment agreement (the "Arbitration"). Arrow Declaration at ¶3, Bogeaus Declaration at ¶ 14. By order dated December 6, 2004, Debtor became a party defendant to the Arbitration. Bogeaus Declaration at ¶ 16. Trial in the Arbitration was scheduled to commence on April 17, 2006. Arrow Declaration at ¶ 5.

On April 14, 2006, both Debtor and Emailfund filed bankruptcy petitions in the Central District of California. Id. "Venue was alleged to exist there based on the location of a manuscript allegedly written by the debtor in a bikini shop [owned by Debtor's acquaintance] in Malibu, California." Complaint at 2:28-3:2; see also Arrow Declaration at ¶ 7.

In his bankruptcy petition, Debtor's residence was listed as being in Seoul, South Korea. Arrow Declaration at ¶ 5. His occupation was listed as a mathematics professor at Yonsei University in Seoul, South Korea. Id. Debtor's Schedules showed he had real property valued at $400,000, secured claims of $400,000, personal property of $1,840,595 and general unsecured

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 6 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 6 of 22

debts of $1,313,549.18. Arrow Declaration at ¶ 6. On June 12, 2006, Debtor's bankruptcy case was dismissed as a bad faith filing and the court imposed a 180 day bar to refiling. Arrow Declaration at ¶ 7.

On August 17, 2006, relief from stay was granted in the Emailfund case to allow Dongjin to proceed with the Arbitration. Arrow Declaration at ¶ 8.

Just a few days after the expiration of the 180-day bar, on March 10, 2007, Debtor filed another bankruptcy case, this time in the District of Massachusetts. Arrow Declaration at ¶ 10. Debtor alleged venue in that district based on residence, domicile, place of business or principal assets. Id. Dongjin determined on its own that an individual named "Soon B. Kim" allegedly lived at the Belmont, Massachusetts address given by Debtor in his petition. Id. Debtor admitted in a declaration submitted in the Arbitration, that he was working as a professor in South Korea at the time this second bankruptcy petition was filed. Id. In this second bankruptcy filing, Debtor's Schedules showed he had no real property assets, personal property valued at $207,050 and unsecured priority debts of $3,500 (plus a $800,000 debt to Dongjin owed jointly by Debtor and Emailfund). Id. at ¶ 11.

Dongjin obtained relief from stay in this second bankruptcy and was allowed to proceed with the Arbitration. Arrow Declaration at ¶ 12. The Arbitration was completed between March 26 and March 29, 2007. Id. at 13. On July 9, 2007, the arbitrator issued the Arbitration Award in Dongjin's favor in the total amount of $944,696.46. Id. The basis for the Arbitration Award was

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 7 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 7 of 22

Dongjin's claim for rescission of the contract due to failure of consideration. Id. Specifically, the Arbitration Award found:

> Emailfund is at fault for failing to make a good faith effort to develop the product, and that this nonperformance is sufficiently material to go to the essence of the agreement such that there was a failure of consideration that entitles Dongjin to rescission.
>
> and
>
> [T]he alter ego doctrine is to be applied such that Kim shall be jointly and severally liable with Emailfund to Dongjin for the $800,000 compensatory damages awarded against Emailfund on Dongjin's cause of action for rescission based on failure of consideration.

Arbitration Award at 4-5. The Arbitration Award did not reach Dongjin's allegations of fraud against Debtor and Emailfund, finding:

> Because the arbitrator has awarded Dongjin $800,000 in rescission damages based on failure of consideration, the arbitrator need not, and does not decide whether Dongjin is entitled to rescission damages based on fraud, or to any other damages based on fraud. This is because even were the arbitrator to determine that there was fraud, Dongjin could not, pursuant to any of its fraud claims, recover damages greater than the $800,000 the arbitrator has awarded Dongjin. (Dongjin does not assert that it is entitled to greater than $800,000 in compensatory damages on either of its fraud claims.) Further, any award to Dongjin on either claim for fraud would be duplicative of, and overlap, the $800,000 awarded.

Arbitration Award at 4. Although Dongjin had sought punitive damages, the Arbitration Award indicates that such damages were not available under AAA Rules. Id.

**C. Proceedings before this Court**

Shortly after the Arbitration Award was rendered, on August 22, 2007, Debtor filed a motion to transfer his bankruptcy case to the Northern District of California, on the basis that he

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 8 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 8 of 22

now resided there. Arrow Declaration at ¶ 17. The order granting this motion was entered on September 14, 2007. Id.

On October 22, 2007, Debtor filed a notice of voluntary conversion to Chapter 7. Id. The Chapter 7 Trustee was appointed on October 24, 2007.

On October 29, 2007, Debtor filed a notice of change of address. Arrow Declaration at ¶ 18. According to the notice, signed by debtor, his address was "Building 90, MC: 2155, Stanford Quad, Stanford, CA 94305-2155." Id. Dongjin is informed and believes this is actually a building housing the Philosophy Department of Stanford University. Id.

This Adversary Proceeding was filed on January 31, 2008. On February 7, 2008, one day after the service of the summons in this Adversary Proceeding, Debtor filed a second notice of change of address with the Court, which simply states as follows:

> I hereby file a notice that as of this twenty-sixth day of January 2008 I will not be any longer at the former address Building 90, Stanford Quad, Stanford, CA 94305-2155. As soon as I have a new address, I will notify you of it.

On February 29, 2008, Debtor filed a motion to dismiss his Chapter 7 case (the "Motion to Dismiss"). In the Motion to Dismiss, Debtor disputed the arbitrator's authority and jurisdiction over him personally in the underlying Arbitration with Dongjin. Debtor argued that the parties never agreed to allow the arbitrator to determine arbitrability. Debtor argued the arbitrator exceeded his authority and, therefore, the Court should refuse to enforce the Arbitration Award against him. The Motion to Dismiss further states:

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 9 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 9 of 22

Debtor will seek a judicial declaration from the California State Court that Debtor is not validly a party to the Arbitration and rulings of the arbitrator to the contrary and any proceedings taken against Debtor are void and of no force or effect, if Creditor seeks to confirm the arbitral award against Debtor in the California state court.

Motion to Dismiss at ¶ 8. Debtor argued that his bankruptcy case is primarily a two-party dispute between himself and Dongjin. Id. at ¶ 11. As such, per Debtor, no parties would be harmed by dismissing this bankruptcy case.

To this Motion to Dismiss, Debtor attached (1) various letters he sent to the arbitrator objecting to jurisdiction over him personally[3] and (2) a copy of a California identification card issued on October 3, 2007, which includes the same address at Stanford University. Debtor said in his Motion to Dismiss that he was conducting research at Stanford, but no longer works there. Motion to Dismiss at ¶ 16.

On March 7, 2008, the Court indicated it would not sign the proposed order on the basis that the Court cannot grant the Motion to Dismiss without a noticed hearing as required by Federal Rule of Bankruptcy Procedure 1017.[4] Despite instructions from the Court to set this matter for hearing, Debtor has never done so.

Debtor has not filed a response in this Adversary Proceeding. On April 11, 2008, the Clerk of the Bankruptcy Court entered a

---

[3] The Arbitration Award notes that "by Order dated December 6, 2004, the Arbitrator determined that Dr. Sangmun Kim, as an individual, is a party to this arbitration as a respondent. As set forth in that Order, Kim contended at that time that he had entered into a written agreement to arbitrate, and that he was a party to this arbitration." Arrow Declaration, Exhibit A at 2-3.

[4] See docket entry 101 in Chapter 7 case.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

default against Debtor.

On May 12, 2008, the Court held a case management conference in this Adversary Proceeding. The docket entry for this hearing indicates the Court instructed Dongjin as follows: "Plaintiff is instructed not to request a Default Judgment for 30 days to see if Defendant files a new address, if new address isn't filed then Plaintiff should serve Defendant at old address." On July 3, 2008, Dongjin filed its Application for entry of default judgment against Debtor. On July 29, 2008, Dongjin served the Application and its supporting declarations on Debtor at the Stanford University address. A review of the dockets for this Adversary Proceeding and Debtor's main Chapter 7 case confirms that no notice of a new address has been filed by Debtor.

## II.

## ANALYSIS

The proposed default judgment seeks relief under several different code sections in an "and/or" alternative ruling. Therefore, each code section cited must be considered separately.

### A. 523(a)(2)

Section 523(a)(2)provides, in pertinent part, as follows:

> (a) A discharge under section 727...of this title does not discharge an individual debtor from any debt--
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit,

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing--

(I) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive

A creditor must prove the elements of nondischargeabilty under § 523(a) by a preponderance-of-the-evidence standard. Grogan v. Garner, 498 U.S. 279, 286 (1991).

**1. 523(a)(2)(A)**

To except a debt from discharge under Bankruptcy Code § 523(a)(2)(A), the creditor must show: (1) the debtor made representations to the creditor; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor (aka scienter); (4) the creditor justifiably relied on the representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996).

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 12 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 12 of 22

As noted above, the Arbitration Award expressly declined to address Dongjin's allegations of fraud by Debtor.[5] However, the evidence provided in the Lee and Bogeaus Declarations, as described above, do tend to support each of these elements. Therefore, default judgment can be entered against the debtor under 523(a)(2)(a).

**2. 523(a)(2)(B)**

To except a debt from discharge under 523(a)(2)(B), the creditor must show: (1) it provided the debtor with money,

---

[5] To the extent that the Arbitration Award does address a particular issue, it is entitled to res judicata and collateral estoppel effect as to the parties to the arbitration. 6 Witkin, California Procedure (5th ed. 2008) Proceedings Without Trial § 562, citing State Farm Mut. Auto Ins. Co. V. Superior Court, 211 C.A.3d 5, 14, 259 C.R. 50 (1989) (collateral estoppel effect as to issues "actually, necessarily, and finally" resolved in arbitration); Thibedeau v. Crum,4 C.A.4th 749, 755, 6 C.R.2d 27, 7 Cal. Proc. (5th), Judgment, §362 (1992) (res judicata doctrine applies to arbitration award, even though unconfirmed, barring subsequent assertion of claims within scope of arbitration); Shell, Richard, Res Judicata and Collateral Estoppel Effects of Commercial Arbitration, 35 U.C.L.A. L. Rev. 623 (res judicata and collateral estoppel effect).

As discussed at pages 9-10 infra, Debtor has suggested in other pleadings that he was not properly a party to the Arbitration. Debtor even suggested he would seek relief from the California State courts when and if Dongjin seeks to confirm the Arbitration Award and enforce it against Debtor. Motion to Dismiss at ¶ 8. However, the time period within which Debtor may have moved to vacate the Arbitration Award against him has long since passed. California Code of Civil Procedure § 1288 provides that "a petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." The Arbitration Award is dated July 9, 2007. If the party who lost in the arbitration does not serve and file a petition to vacate within the 100-day period from the date of service of the award, the award must be treated as final. Eternity Investments, Inc. v. Brown, 60 Cal.Rptr.3d 134, 151 Cal.App.4th 739 (Cal.App. 2 Dist. 2007).

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

property, services or credit based on a written representation of fact by the debtor as to debtor's financial condition; (2) the representation was materially false; (3) the debtor made the representation with the intention of deceiving the creditor; (4) the creditor relied on the representation; (5) the creditor's reliance was reasonable; and (6) damage proximately resulted from the representation. In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992); In re Candyland, 90 F.3d 1466, 1469 (9th Cir. 1996).

Again, although not addressed by the Arbitration Award, the Lee and Bogeaus Declarations do tend to support each of these elements. Therefore, a default judgment can be entered against Debtor under 523(a)(2)(B).

**B. 523(a)(6)**

Section 523(a)(6) provides:

> (a) A discharge under section 727...of this title does not discharge an individual debtor from any debt--
>
> . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

A simple breach of contract is not the type of injury intended to by covered by § 523(a)(6). In re Jercich, 238 F.3d 1202, 1205 (9th Cir. 2001); In re Riso, 978 F.2d 1151, 1154 (9th Cir. 1992). Even an intentional breach of contract generally will not lead to nondischargeability under § 523(a)(6) unless accompanied by malicious and willful tortious conduct. Jercich, 238 F.3d at 1205; Riso, 978 F.2d at 1154. The Arbitration Award obtained by Dongjin

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 14 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 14 of 22

was on the basis of rescission of the contract for failure of consideration. This does not appear to be the type of "willful and malicious" conduct contemplated by 523(a)(6), and Dongjin has not presented sufficient evidence to support such a finding. Therefore, a default judgment should not be entered against the debtor under 523(a)(6).

**C. 727(a)(2)**

Section 727(a)(2) provides:

> (a) The court shall grant the debtor a discharge, unless--
>
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed--
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition

In this case, evidence has been submitted that Debtor diverted $742,000 belonging to EmailFund to BZ21, another corporation wholly owned and controlled by Debtor, to himself and to an unknown entity. Arbitration Award at 5. These transfers appear to have occurred in 2001. Bogeaus Declaration at ¶ 34. To the extent that the corporate veil has been pierced by the Arbitration Award, then this would be a diversion of Debtor's property. However, these transfers appear to have occurred roughly 6 years prior to the filing of Debtor's current bankruptcy case. Since these transfers

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

were not made within one year of the bankruptcy filing, Bankruptcy Code § 727(a)(2) is not applicable. There is no other evidence currently before the Court regarding transfers by Debtor just prior to his bankruptcy filing. Therefore, default judgment cannot be rendered in Dongjin's favor under 727(a)(2).

**D. <u>727(a)(3)</u>**

Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge unless-
>
> . . .
>
> (3) the debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

Under 727(a)(3), the debtor's actions are analyzed under an objective standard. "[I]f the extent and nature of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, she must show more than that she did not comprehend the need for them." <u>In re Cox</u>, 41 F.3d 1294, 1297 (9th Cir 1994). The mere failure to keep whatever books and records are objectively typical under the circumstances is enough to trigger the statute. It is not necessary that the failure have been based on a wrongful desire to conceal information or harm creditors. <u>Id</u>.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California



Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 16 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 16 of 22

Evidence has been submitted by Dongjin that Debtor failed to maintain the business records of Emailfund. The arbitrator specifically noted:

> Emailfund's failure to observe corporate formalities and maintain proper books and records. This includes incomplete, inadequate ledgers, journals and other accounting records, and falsified signatures on minutes of what were claimed to be meetings of Emailfund's board of directors.

Arbitration Award at 5. Per the Arbitration Award, there were no payroll records and no employment contracts for Debtor or any other officer of Emailfund. This evidence does support a denial of discharge under 727(a)(3).

**E. <u>727(a)(4)</u>**

Section 727(a)(4) provides:

> (a) The court shall grant the debtor a discharge unless--
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>
> (A) made a false oath or account;
>
> (B) presented or used a false claim;
>
> (C) gave, effected, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs

Per Bankruptcy Rule 4005, plaintiff bears the burden of proving by a preponderance of the evidence that false oaths were "knowingly and fraudulently" made, in or in connection with the bankruptcy case. The mere making of a false oath in or in connection with the bankruptcy case is not enough to deny discharge under §727(a)(4). The false oath must have been made "knowingly and fraudulently". In re Adeeb, 787 F.2d 1339 (9th Cir. 1986); In re Devers, 759 F.2d 751 (9th Cir. 1985). Actual, and not merely constructive, intent to defraud must be shown. In re Woodfield, 978 F.2d 516 (9th Cir. 1992). Such actual intent may be inferred from the surrounding circumstances. Id. Thus, the nature of each false oath made in or in connection with the case must be examined in the context of the bankruptcy case to determine whether it supports an inference that it was made "knowingly and fraudulently", i.e., with the intent to defraud the court, the trustee, or creditors.

The false statements that Dongjin has alleged Debtor has made relating to this bankruptcy case are: (1) his address and (2) his Schedules, which were vastly different from those filed in his prior bankruptcy case roughly one year prior. With respect to the issue of his address, Debtor has submitted a copy of a California identification card with the same address as that used to establish venue before this Court. With respect to the Schedules, a $400,000 real estate property in Korea was eliminated along with its

Case: 07-53166 Doc# 104 Filed: 12/23/08 Entered: 12/23/08 13:49:02 Page 18 of 22
Case: 08-05023 Doc #: 16 Filed: 12/22/2008 Page 18 of 22

corresponding $400,000 disputed secured debt owed to Dongjin. More troubling, however, is the reduction of value of Debtor's personal property from $1,840,595 to $207,050.[6] Unsecured debts also shrank from $1,313,549.18 to $803,500 (including the $800,000 award to Dongjin which was valued at $800,000 in Debtor's 2006 Schedules but is listed as an "unknown" amount in Debtor's 2007 Schedules).[7] However, there was a one-year gap between the filing of the two sets of schedules. Many things could have happened. Therefore, on the scant evidence currently before the Court, a default judgment under 727(a)(4) is not supported.

**F. <u>727(a)(5)</u>**

Section 727(a)(5) provides:

> (a) The court shall grant the debtor a discharge unless--
>
> . . .

---

[6] The bulk of this change in value of Debtor's personal property is attributable to the devaluation by Debtor of stock holdings in corporations formed by Debtor. In his 2006 Schedules, Debtor valued his 2.9 million shares of Emailfund at $510,000. In his 2007 Schedules, these same shares were valued at $0. In his 2006 Schedule B, Debtor also listed 8.2 million shares in MobileBZ (82% ownership) valued at $700,000. The MobileBZ shares are not listed in his 2007 Schedule B, which is dated 1 year and one day after his 2006 Schedules. Likewise missing from his 2007 Schedule B is a $50,000 pension from Yonsei University. Debtor lists the intellectual property of a "mathematics manuscript" in both sets of Schedules, but the value decreases from $574,000 in his 2006 Schedule B to $200,000 in his 2007 Schedule B.

[7] The most significant change in Debtor's unsecured claims was the elimination of a $400,000 personal loan by Hwang Kyu of Chunan, Korea was listed in Debtor's 2006 Schedule F, but not listed in Debtor's 2007 Schedule F.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities

Section 727(a)(5) denies a discharge to a debtor who has failed to explain satisfactorily any loss or deficiency of assets. Whether an explanation is satisfactory must necessarily be determined on a case by case basis. See In re Devers, 759 F.2d 751 (9th Cir 1985).

There has been no discussion of any kind about a loss of assets by Debtor at this point. Dongjin has its suspicions, but there is currently no evidence before the Court on this issue. Therefore, on the evidence currently before the Court, default judgment under 727(a)(5) is not appropriate.

**III.**

**CONCLUSION**

For the above stated reasons, the Application is granted. The Court shall enter a Default Judgment against Debtor, but only under the provisions of Bankruptcy Code §§ 523(a)(2) and 727(a)(3). The evidence currently before the Court does not support the entry of a default judgment under the remaining alternative bases

\\\

\\

asserted by Dongjin, namely Bankruptcy Code §§ 523(a)(3), 523(a)(4), 523(a)(5), 727 (a)(2), 727 (a)(4) and 727(a)(5).

Dated: 12/22/08

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

<u>Court Service List</u>

Craig C. Chiang, Esq.
Buchalter Nemer
333 Market St., 25th Floor
San Francisco, CA 94105-2126

Sangmun Kim
aka Suang Muon Kim
Building 90, MC 2155
Stanford Quad
Stanford, CA 94305-2155

Carol Wu
Chapter 7 Trustee
25A Crescent Dr. #412
Pleasant Hill, CA 94523

Office of the U.S. Trustee
280 S. 1st St #268
San Jose, CA 95113

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

MEMORANDUM DECISION

22